The DELAWARE DEPARTMENT OF NATURAL RESOURCES & ENVIRONMENTAL CONTROL, an agency of the State of Delaware, Defendant Below, Appellant,

v.

SUSSEX COUNTY, a political subdivision of the State of Delaware; White Farm, LLC, a Delaware Limited Liability Company; BAR–SGR, LLC, a Delaware Limited Liability Company; BAR–RAB, LLC, a Delaware Limited Liability Company; Wayne Baker, LLC, a Delaware Liability Company; and Baxter Farms, Inc., a Delaware Corporation, Plaintiffs Below, Appellees.

No. 145, 2011.

Supreme Court of Delaware.

Submitted: Nov. 30, 2011.
Decided: Dec. 29, 2011.

David L. Ormond, Jr., Esquire (argued), Department of Justice, Dover, Delaware, and William T. Quillen, Esquire and Joseph C. Schoell, Esquire, Drinker Biddle & Reath LLP, Wilmington, Delaware, for appellant.

David N. Rutt, Esquire (argued), Moore & Rutt, P.A., Georgetown, Delaware, for Sussex County.

Matthew Neiderman, Esquire (argued), and Gary W. Lipkin, Esquire, Duane Morris LLP, Wilmington, Delaware, for White Farm, LLC, BAR–SGR, LLC, BAR–RAB, LLC, Wayne Baker, LLC and Baxter Farms, Inc.

Kenneth T. Kristl, Esquire, Widener Environmental and Natural Resources Law Clinic, Wilmington, Delaware, amicus curiae for The Sierra Club.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices, constituting the Court en Banc.

HOLLAND, Justice:

At issue in this case is the validity of Sections 4 and 5 of the Delaware Department of Natural Resources & Environmental Control's ("DNREC") "Regulations Governing the Pollution Control Strategy for the Indian River, Indian River Bay, Rehoboth Bay and Little Assawoman Bay Watersheds" ("PCS Regulations"), which were promulgated in 2008 to effect DNREC's Pollution Control Strategy ("PCS") for the Inland Bays watershed area.

On November 25, 2008, Sussex County filed a complaint against DNREC asserting that DNREC exceeded its constitutional and statutory authority in promulgating the PCS Regulations. On November 26, 2008, White Farm, LLC, BAR–SGR, LLC, Wayne Baker, LLC, and Baxter Farms, Inc. filed a complaint alleging essentially the same violations by DNREC. Both complaints sought the issuance of a declaratory judgment[1] invalidating certain portions of the PCS Regulations.

The Superior Court held that Section 4 of the PCS Regulations, which establishes the water quality buffer, and the related stormwater control provisions of Section 5, constituted "zoning," and thus directly conflicted with the Sussex County Zoning Ordinance. The Superior Court held those portions of the PCS Regulations were void and ordered that they be stricken.[2]

In this appeal, DNREC argues that the Superior Court erred as a matter of law in holding that those portions of the PCS Regulations imposing a water quality buffer constitute illegal zoning and are void. According to DNREC, the water quality buffer provisions in the PCS Regulations, codified at 7 Del. Admin. C. § 7403, do not constitute zoning because they were promulgated for pollution control purposes only. DNREC asserts that the PCS Regulations were promulgated pursuant to title 7, section 6010(a) of the Delaware Code to effectuate Chapter 60's express policy and purpose of pollution control. DNREC also submits that the water quality buffer provisions in the PCS Regulations do not conflict with any law of this State, including the Sussex County Zoning Ordinance, which creates a zoning buffer.

We have concluded that DNREC's "no zoning" argument is contradicted by language in those portions of the PCS Regulations that are at issue. Therefore, the judgment of the Superior Court must be affirmed.

### Facts

DNREC undertook to reduce pollution in the Indian River, Indian River Bay, Rehoboth Bay and Little Assawoman Bar and their tributaries ("Inland Bays"). In contemplation of issuing appropriate regulations, DNREC received public comments from 2005 through 2008. In May 2008, DNREC announced the Pollution Control Strategy ("PCS") for the Inland Bays

---

1. Del.Code Ann. tit. 29, § 10141(a) (West 2006).

2. *Sussex Cnty. v. Del. Dep't of Natural Res. & Envtl. Control,* 2011 WL 1225664, at *6 (Del.Super. Feb. 25, 2011).

based on the recommendations offered by the Inland Bays Tributary Action Team.[3]

On June 1, 2008, DNREC published the PCS Regulations in the Delaware Register of Regulations. Approximately 400 persons attended a public hearing on June 23, 2008, many of whom were concerned about the DNREC—mandated water quality "buffers" that are at issue in this appeal. On October 14, 2008, a Hearing Officer issued a report summarizing the procedural posture of the PCS Regulations and the extensive comments taken, and discussing the authority for the issuance of the regulations. On October 15, 2008, the PCS Regulations were adopted and codified at 7 Del. Admin. C. § 7403.

All parties acknowledge that the primary focus of the litigation is on Sections 4.0 (Buffer Zone Established) and 5.0 (Sediment and Stormwater Controls). Those sections combine to effectuate buffer zones, which limit landowners' uses of their property if the property is adjacent to an Inland Bay waterway. Water quality buffers are described as natural areas between the active land uses and wetlands, or water bodies. The buffers are managed to promote the natural removal of pollutants and to protect wetlands against encroachment or physical alterations. The PCS Regulations require the buffer zone to be 100 feet.

### Standard of Review

The issue to be decided is the validity of Sections 4 and 5 of the PCS Regulations. Title 29, section 10141(e) of the Delaware Code states:

Upon review of regulatory action, the agency action shall be presumed to be valid and the complaining party shall have the burden of proving either that the action was taken in a substantially unlawful manner and that the complainant suffered prejudice thereby, or that the regulation, where required, was adopted without a reasonable basis on the record or is otherwise unlawful.[4]

In enacting the PCS Regulations, the DNREC Secretary, John Hughes ("Secretary"), maintained that the department's statutory authority derives primarily from title 7, section 6010(a) of the Delaware Code.[5] This section provides that "[t]he Secretary may adopt, amend, modify or repeal rules or regulations, or plans, after public hearing, to effectuate the policy and purposes of this chapter. No such rule or regulation shall extend, modify or conflict with any law of this State or the reasonable implications thereof." [6] Within his Order adopting the PCS Regulations on October 15, 2008, the Secretary also found support for the PCS Regulations in the federal Clean Water Act ("CWA"),[7] and in particular Sections 305(b) and 305(d). The Secretary explicitly rejected the argument that the water quality buffers were outside DNREC's authority because "[t]he buffer areas are required to protect the water quality of the Inland Bays, which is one of the Department's central purposes, as delegated from the General Assembly."

The Superior Court found that the PCS Regulations, in establishing buffer zones and in regulating the use of land, constitute zoning,[8] which falls within the regula-

---

3. The Inland Bays Tributary Action Team was set up by DNREC to develop the PCS; the Team was comprised of local government representatives, business people, environmentalists, farmers, residents, and other individuals.

4. Del.Code Ann. tit. 29, § 10141(e).

5. Del.Code Ann. tit. 7, § 6010(a).

6. *Id.*

7. 33 U.S.C. § 1251, *et seq.*

8. *Sussex Cnty. v. Del. Dep't of Natural Res. & Envtl. Control*, 2011 WL 1225664, at *4 (citing *Farmers for Fairness v. Kent Cnty.*, 2007 WL 1413247 (Del.Ch. May 1, 2007); *rearg. den.*, 2007 WL 1651931 (Del.Ch. May 25,

tory authority of the counties, not DNREC. DNREC argues, however, that the water quality buffer provisions in the PCS Regulations do not constitute zoning because they were promulgated for pollution control purposes only (stating that the regulations create "water quality buffers"). As such, DNREC maintains, the PCS Regulations were lawfully promulgated pursuant to title 7, section 6010(a) of the Delaware Code to effectuate Chapter 60's express policy and purpose of pollution control.

Questions of law are reviewed *de novo*.[9] Statutory interpretation is a question of law. Accordingly, this Court does not defer to either the agency's or the Superior Court's interpretation of the statutes in question.[10]

### Sussex County Zoning Authority

The power to zone is vested in the General Assembly.[11] Under article II, section 25 of the Delaware Constitution of 1897, however, the General Assembly is authorized to delegate this power to the counties. Article II, section 25 of the Delaware Constitution of 1897 provides:

> The General Assembly may enact laws under which municipalities and the County of Sussex and the County of Kent and the County of New Castle may adopt zoning ordinances, laws or rules limiting and restricting to specified districts and regulating therein buildings and structures according to their construction and the nature and extent of their use, as well as the use to be made

of land in such districts for other than agricultural purposes; and the exercise of such authority shall be deemed to be within the police power of the State.[12]

The General Assembly delegated zoning power to Sussex County by statute under title 9, section 6902(a) of the Delaware Code:

> The county government may, in accordance with the conditions and procedure specified in this subchapter, regulate the location, height, bulk and size of buildings and other structures, the percentage of lot which may be occupied, the size of yards, courts and other open spaces, the density and distribution of population, the location and uses of buildings and structures for trade, industry, residence, recreation, public activities or other purposes and the uses of land for trade, industry, residence, recreation, public activities, water supply conservation, soil conservation or other similar purposes, in that portion of Sussex County which is not included within the corporate limits of any city or town, unless any territory within such corporate limits is included upon request made by the governing body or authority of such city or town, not withstanding any provision of other titles or chapters of this Code to the contrary.[13]

Title 9, Chapter 69 of the Delaware Code governs all aspects of zoning in Sussex County.[14] Other relevant statutes that delegate zoning power to Sussex County are title 9, section 7001 (the Home Rule statute)[15] and title 9, section 6951 (the

---

2007), *aff'd*, 940 A.2d 945, 2007 WL 4941961 (Del. Nov. 19, 2007)).

9. *Id.*

10. *Id.*

11. *New Castle Cnty. Council v. BC Dev. Assocs.*, 567 A.2d 1271, 1275 (Del.1989).

12. Del. Const. of 1897, art. II, § 25. *See also New Castle Cnty. Council v. BC Dev. Assocs.*, 567 A.2d at 1275 (citing Del.Code Ann. tit. 9, § 2601).

13. Del.Code Ann. tit. 9, § 6902(a).

14. Del.Code Ann. tit. 9, § 6901, *et seq.*

15. The relevant portion of this statute reads:

Quality of Life Act of 1988).

In statutorily delegating zoning power, the General Assembly has granted the counties broad authority.[16] This Court has held:

The General Assembly through grants of home rule has ceded primary responsibility for land use control to county and municipal governments.

In this delegation of its power over land use, the General Assembly, in effect, has surrendered that incident of its sovereignty to subordinate governmental entities. Thus, the counties, as well as departments of State government, can also claim to be agents of the State in the discharge of the sovereign's power to regulate land use.[17]

In *Concerned Citizens of Cedar Neck, Inc. v. Sussex Cnty. Council*,[18] the Court of Chancery examined the Land Use Planning Act and the issues of delegation and coordination. It concluded:

The Land Use Planning Act was apparently aimed at achieving consistency and coordination between the different

levels of government in Delaware. The Act, however, does not transfer zoning authority from local to state control. While the Act provides for notice and comment by the various state agencies on proposed land use action, "the final decision-making authority" remains with the local jurisdiction.[19]

Thus, the General Assembly has made clear that the authority to adopt a comprehensive land use plan in Sussex County is vested solely with the government of Sussex County. The comprehensive plan, once adopted, has the force of law.[20] As part of the comprehensive land use plan process, the statute requires DNREC and other State agencies to bring zoning issues to the county government.

Two other chapters of the Delaware Code provide for the same division of authority between Sussex County and State agencies. The first is the Quality of Life Act,[21] and the second is the Delaware Land Protection Act ("DLP Act").[22] In section 6951(b) of the Quality of Life Act, the General Assembly specified that the

---

(a) *General powers.*—The government of Sussex County, as established by this chapter, shall assume and have all powers which, under the Constitution of the State, it would be competent for the General Assembly to grant by specific enumeration, and which are not denied by statute; including, but not limited to, any powers conferred prior to the effective date of this act by the General Assembly upon Sussex County, ... or upon the officers or employees of Sussex County, or upon counties generally, ... or upon county Councils generally.

(b) *Construction.*—The powers of Sussex County under this reorganization law shall be construed liberally in favor of the County, and specific mention of particular powers in the reorganization law shall not be construed as limiting in any way the general powers stated in subsection (a) of this section.

(d) *Exercise of Powers.*—All powers of the government of Sussex County shall be carried into execution as provided by this title

or by other law of this State or if this title or other law of this State makes no such provision, as provided by ordinance or resolution of the county government of Sussex County.
Del.Code Ann. tit. 9, § 7001.

16. *New Castle Cnty. Council v. BC Dev. Assocs.*, 567 A.2d at 1275.

17. *Hayward v. Gaston*, 542 A.2d 760, 766 (Del.1988) (internal citations omitted).

18. *Concerned Citizens of Cedar Neck, Inc. v. Sussex Cnty. Council*, 1998 WL 671235 (Del. Ch. Aug. 14, 1998).

19. *Id.* at *6 (citing Del.Code Ann. tit. 29, § 9220(A)).

20. Del.Code Ann. tit. 9, § 6959(a).

21. Del.Code Ann. tit. 9, § 6951, *et seq.*

22. Del.Code Ann. tit. 7, § 7501, *et seq.*

various State agencies must cooperate with the County government in preparation of a comprehensive plan.[23] The Quality of Life Act operates in conjunction with the DLP Act to preserve open spaces in the State. Under the DLP Act, certain areas are designated as State Resource Areas ("SRAs"), which are to be protected by the county governments via zoning ordinances. "The clear intent of the SRA legislation is to protect SRA properties from development *via the local zoning process.*"[24] Once again, by requiring that the SRAs be made part of the county zoning process, the General Assembly reserved zoning power to the county governments.

### Buffer Zones Conflict

The Sussex County Zoning Ordinance Section 115–193 ("Sussex County Zoning Ordinance"), entitled "Buffer zones for wetlands and tidal and perennial nontidal waters", was enacted in 1988. A buffer zone is defined as follows:

> An existing naturally vegetated area or an area purposely established in vegetation which shall not be cultivated in order to protect aquatic, wetlands, shoreline and upland environments from manmade encroachment and disturbances. The "buffer zone" shall be maintained in natural vegetation, but may include planted vegetation where necessary to protect, stabilize or enhance the area.

Unlike DNREC's PCS Regulations, which in Section 4.2.1 establishes a 100–foot buffer, the Sussex County Zoning Ordinance establishes only a 50–foot buffer "landward from the mean high water line of tidal waters, tidal tributary streams and tidal wetlands and from the ordinary high water line of perennial nontidal rivers and nontidal streams in Sussex County."[25]

DNREC takes the position that there is no direct conflict between the two buffer zones because "[n]othing in the PCS buffer of 100 feet prevents compliance with the Ordinance 115–193's buffer of 50 feet."[26] DNREC maintains that, in the absence of a genuine conflict, local and State regulations operate concurrently and there is no preemption by the Sussex County Zoning Ordinance.[27] According to DNREC, to warrant a finding of preemption by the Sussex County Zoning Ordinance, there must be an inconsistency that "hinder[s] the objectives" of a concurrent regulation.[28] DNREC maintains that the two regulations are complementary, because Sussex County's 50–foot buffer is not "hindered" by the PCS Regulations' 100–foot buffer.

Sussex County responds that there is a direct conflict between the PSC Regulations and the Sussex County Zoning Ordinance for at least three reasons. First, allowing the PCS Regulations to stand would effectively establish the first 50 feet as the Sussex County buffer and the second 50 feet as the DNREC buffer. Second, the Sussex County buffer can be entirely within an existing lot, whereas Section 4.5 of the PCS Regulations explicitly prohibits the extension of lot lines into the buffer area. Third, Section 4.7 of

**23.** Del.Code Ann. tit. 9, § 6951(b).

**24.** *Cartanza v. Del. Dep't of Natural Res. & Envtl. Control,* 2008 WL 4682653, at *1 (Del. Ch. Oct. 10, 2008) (Master's Report) (emphasis added), *adopted,* 2009 WL 106554 (Del.Ch. Jan. 12, 2009).

**25.** Sussex County, Del., Zoning Ordinance ch. 115, art. XXV, § 115–193(B) (1988).

**26.** Appellant's Op. Br. at 15.

**27.** *See, e.g., Cantinca v. Fontana,* 884 A.2d 468, 473 (Del.2005) ("[T]he State and its political subdivisions are permitted to enact similar provisions and regulations, so long as the two regulations do not conflict.").

**28.** *Id.* at 474; *A.W. Fin. Svcs., S.A. v. Empire Res., Inc.,* 981 A.2d 1114, 1129–30 (Del.2009).

the PCS Regulations prohibits submission of site plans unless they comply with the ·regulations, whereas the Sussex County Zoning Ordinance has an established procedure for the submission, review, and approval of site plans from the preliminary stage to final recording. Sussex County argues that these differences individually and collectively exemplify the direct conflicts between the PCS Regulations and the Sussex County Zoning Ordinance.

The Superior Court was persuaded by Sussex County's arguments. It concluded that the PCS Regulations "directly conflict with Sussex County's Zoning Ordinance § 115–193." [29] That conclusion is supported by the record. The conflict is dramatically illustrated by Section 4.7 of the PCS Regulations, which prohibits the submission to Sussex County of final site plans and final major subdivision plans unless they comply with the PCS Regulations. Therefore, the remaining issue is whether the PCS Regulations are valid, even if they conflict with the Sussex County Zoning Ordinance.

### Regulations Constitute Zoning

DNREC acknowledges that Sussex County "has zoning authority and that it has been exercised in relation to the instant dispute." [30] In its opening brief, DNREC also acknowledges that "nothing in Title 7, Chapter 60 [suggests] that the General Assembly intended to authorize zoning as a subject of DNREC's regulation." [31] DNREC further acknowledges in its brief that nothing in the PCS Regulations suggests that the Secretary· intended to engage in zoning.[32]

■ DNREC argues that Sections 4 and 5 of the PCS Regulations do not constitute zoning. DNREC submits that if the buffer zone is not zoning, it has the statutory authority to implement the buffer zones in Sussex County, even if they conflict with the Sussex County Zoning Ordinance. A review of the PCS Regulations is necessary to ascertain the effect of those Regulations on Sussex County's zoning authority. The most relevant provisions are the following:

1.1: These Regulations apply to the public and private lands draining into the Indian River, Indian River Bay, Rehoboth Bay and Little Assawoman Bay and their tributaries (collectively referred to as "the Inland Bays").

1.3: Proposed major subdivision plans, site plans, concept plans, initial stage calculation sheets, requests for service level evaluation, or requests for scoping meetings which have been received by DelDOT prior to the effective date . . . are not subject to the buffer and stormwater requirements of these Regulations, Sections 4 and 5 . . . .

4.0 **Buffer Zone Established: This section requires riparian buffers in order to protect and improve water quality.**

4.1.1: A buffer is only **required for new major subdivisions and new activities requiring a site or major subdivision plan approval by Sussex County** or other local government. For redevelopment projects, new improvements within the respective buffer shall be permitted at the existing set back or greater in accordance with applicable county or local ordinances.

4.1.2: This buffer provision does not apply to major subdivisions, site plans, or individual lots used for detached single

---

**29.** *Sussex Cnty. v. Del. Dep't of Natural Res. & Envtl. Control,* 2011 WL 1225664, at *3.

**30.** Appellant's Op. Br. at 28.

**31.** *Id.* at 23.

**32.** *Id.*

family homes recorded prior to effective date of this regulation.

4.2: For purposes of this Section, buffers are hereby established for primary and secondary water features.

**4.2.1: Buffers of 100 feet are hereby established landward from State-regulated wetlands, or landward from the mean high water line of all tidal waters, whichever extends farther upland, and landward from the ordinary high water mark of all other primary water features.**

**4.2.2: Buffers of 60 feet are hereby established landward from the ordinary high water mark of all secondary water features.**

4.3: Buffer widths may be reduced to the widths specified below when combined with the provisions outlined in Section 5 and contingent upon the creation of a development-wide nutrient management plan created by a certified nutrient consultant and implemented by a certified nutrient handler in accordance with the *Regulations Governing the Nutrient Management Program.*

**4.3.1: Buffers of 50 feet are hereby established landward from State-regulated wetlands, or the mean high water line of all tidal waters, whichever extends farther upland, and from the ordinary high water mark of all other primary water features.**

**4.3.2: Buffers of 30 feet are hereby established landward from the ordinary high water mark of all secondary water features.**

4.4: When Section 4.3 applies, **the applicant shall ensure that deed restrictions and the homeowner's association bylaws include the following statement:** "This development is subject to a nutrient management program, which shall be implemented by a certified nutrient handler. The nutrient management plan is designed to reduce pollutants entering the Inland Bays. The nutrient management plan must be maintained and implemented in accordance with the Inland Bays Pollution Control Strategy and *Regulations of the Pollution Control Strategy for the [Inland Bays].* In addition, the following requirements must also be met:

> 4.4.1: The homeowner's association must retain the nutrient management plan on file and maintain records of nutrient applications. A summary of nutrient application records must be submitted to the Delaware Department of Agriculture, Nutrient Management Program on an annual basis.

> 4.4.2: **The homeowner's association must sign and accept any and all responsibility for implementation of these requirements.**

4.5: In order to protect buffers and thus water quality, **no landowner or their representative shall extend lot lines into buffers.**

4.7: **No person shall submit final site plans or final major subdivision plats without including buffers as defined and described in these regulations that are clearly demarcated, designated, and recorded on such plans or plats.**

4.8: **Property owner(s) shall maintain the buffer in perpetuity in accordance with these regulations.** Property owners shall install boundary signs or markers or distinctive vegetation identifying the upland edge of the buffer.

5.3.1: For properties that contain primary and/or secondary water features, establish buffers consistent with Section 4.2 of these Regulations; or

5.3.2: For properties that contain primary and/or secondary water features, establish buffers consistent with Sections 4.3 and 4.4 of these Regulations in

combination with any of the options listed in 5.3.3 of this Section[.]

5.4 When Sections 5.3.1 or 5.3.2 apply, the **buffer zone** shall be established in accordance with Section 4 of these Regulations.

In determining whether the PCS Regulations constitute zoning, we begin with the definition of zoning:

"Zoning" is the division of land into distinct districts and the regulation of certain uses and developments within those districts. It is the process that a community employs to legally control the use which may be made of property and the physical configuration of development upon tracts of land located within its jurisdiction. Generally, zoning ordinances provide control over land use within a neighborhood and are part of a comprehensive plan for community development.[33]

The title of Section 4.0 of the PCS Regulations is "Buffer Zone Established." These words are unambiguous and leave no doubt about the intent of the PCS Regulations. Consistent with that intent, Section 4.1.1 mandates a buffer for "new subdivisions and new activities requiring a site or major subdivision plan approval by Sussex County or other local government."

In *Coker v. Kent Cnty. Levy Ct.*,[34] the Court of Chancery examined the Kent County Zoning Ordinance, which requires a 100–foot buffer between any water feature and any structure. The Court of Chancery held that "[s]etbacks [i.e. buffers] serve an important role in any *zoning scheme*, and this includes setback requirements that are meant to protect an environmental feature like a body of water."[35] The Court of Chancery's recognition of

setbacks or buffers as part of a zoning scheme supports the Superior Court's conclusion that the PCS Regulations at issue constitute zoning.

Moreover, the PCS Regulations are pervasive in nature and go far beyond just establishing buffer zones. First, and foremost, Section 4.7 provides that no final major subdivision plats or final site plans can even be submitted to Sussex County for consideration unless the application includes the buffer zones and restrictions provided for in the PCS Regulations. Accordingly, the PCS Regulations purport to completely prohibit Sussex County from exercising its zoning authority in the absence of compliance.

In addition, the PCS Regulations encroach on Sussex County's zoning authority throughout the other provisions of Sections 4 and 5. Aside from establishing the buffer zones, the PCS Regulations place mandatory requirements on the local homeowner's association bylaws regarding the buffer restrictions. Moreover, the buffer restrictions must also be included in deeds. Further, in Section 4, the PCS Regulations limit proposals for lot lines. The power and authority to regulate these types of proposals are quintessential zoning decisions.

We hold that the buffer zones established in the PCS Regulations and the related mandates constitute zoning because they impose land use restrictions on Sussex County's inland bays watersheds by multiple methods that are well-established zoning actions. The PCS Regulations and their establishment of buffer zones with restrictions contravene the exclusive zoning authority to regulate land

---

**33.** 83 Am.Jur.2d *Zoning and Planning* § 3 (2011) (internal citations omitted).

**34.** *Coker v. Kent Cnty. Levy Ct.*, 2008 WL 5451337 (Del.Ch. Dec. 23, 2008).

**35.** *Id.* at *10 (emphasis added).

use in Sussex County. That authority is delegated to the government of Sussex County by the Delaware Constitution of 1897 and statutes enacted by the General Assembly. The Superior Court properly held that DNREC's general legislative authority to control pollution and to protect the environment is insufficient to authorize DNREC to adopt regulations that zone Sussex County's inland bays watersheds.

Accordingly, because (i) the PCS Regulations constitute zoning; (ii) the PCS Regulations directly conflict with the Sussex County Zoning Ordinance; and (iii) DNREC lacks the statutory authority to engage in zoning practices, DNREC exceeded its powers in enacting the PCS Regulations. The Superior Court properly held that Section 4 and those portions of Section 5 adopting the buffer restrictions under Section 4 were void and must be stricken.

### Conclusion

The judgment of the Superior Court is affirmed.