# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ROBERT WALKER, JR., JOHN KANE, CAROL KANE and MARGARET FOULKE, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) | C.A. No. 9667-VCG |
| | ) | |
| CHARLES L. WILLIAMS, | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Date Submitted: September 27, 2016
Date Decided: November 4, 2016

Dean A. Campbell of THE LAW OFFICE OF DEAN CAMPBELL, LLC, Georgetown, Delaware, *Attorney for Plaintiffs*.

Richard E. Berl, Jr., of BERL AND FEINBERG, LLP, Lewes, Delaware, *Attorney for Defendant*.

GLASSCOCK, Vice Chancellor

This matter involves the use by the Defendant, Charles Williams, of a pole building beside his house as a hobby automobile shop. This matter has been, unfortunately, heavily litigated and it has undoubtedly consumed more of the parties' resources than a neutral observer might think efficient or reasonable. The matter was tried for two days and what I consider to be the primary issue—whether Williams' pursuit of his hobby constituted a nuisance-in-fact—was resolved in a Memorandum Opinion of June 23, 2016 ("*Walker I*").[1] In *Walker I*, I found that Williams' use of the property did not constitute sufficient invasion of the property rights of his neighbors to be an actionable nuisance.[2]

The Plaintiffs—Defendant's neighbors—raised other issues at trial and in the post-trial briefing. They argue that Williams' use of his pole building (the "Pole Building" or the "Shop") is illegal under the County Zoning Code (the "Zoning Code"),[3] that the construction of that building is in some respects in violation of the County Building Code (the "Building Code"),[4] that the use of Williams' property for non-commercial auto repair is a nuisance *per se* and that ornamental signs that Williams has mounted on his building are in violation of the Zoning Code. I asked

---

[1] *Walker v. Williams*, 2016 WL 3569260 (Del. Ch. June 23, 2016).
[2] I did, however, find that the use by Mr. Williams and his guests of a lane over an easement providing access to his property in some respects exceeded the use permitted by that easement.
[3] Sussex County Code, Zoning, Chapter 115.
[4] Sussex County Code, Building Construction, Chapter 52.

1

for supplemental briefing on some of these issues, which the parties provided. This is my post-trial Memorandum Opinion on the issues not addressed in *Walker I*.

## I. FACTS AND BACKGROUND

The facts in this matter are adequately laid out in *Walker I*; interested readers (if any) are referred to that Memorandum Opinion. A brief statement of background facts is sufficient to this supplemental Memorandum Opinion; facts necessary to discussions of specific issues are addressed in the sections resolving those issues. Otherwise I rely upon and incorporate the facts stated in *Walker I.*

The Defendant and the Plaintiffs live in a semi-rural area of Sussex County near Cool Spring, designated Agricultural-Residential 1 ("AR-1") for zoning purposes. The surrounding area includes homes on large lots located adjacent to the public highways; these homes are typically bordered in the rear by agricultural fields, chicken houses and other agricultural activities. Two of the Plaintiffs (Margaret Foulke and Robert Walker) own houses on lots adjacent to Williams' property. A reference to the "Plaintiffs" refers, in context, to these particular plaintiffs.[5]

The Defendant originally owned a five acre parcel which he subdivided; the Plaintiffs occupy two lots created from that larger parcel. The Defendant retained a

---

[5] The remaining Plaintiffs, John and Carol Kane, live across and down the public road from Foulke and Walker, and their lot does not abut the property of the Defendant.

2

lot, and an easement across property now owned by Walker. Williams has a modest home beside which is the Pole Building, which was built pursuant to a building permit and occupied pursuant to a certificate of occupancy issued by Sussex County (the "County"). The Pole Building contains areas used for storage but is used principally by Williams as a shop to pursue his hobby, tinkering with cars. The Plaintiffs object to this use and have made numerous complaints to the County. County inspectors have repeatedly inspected Defendant's property but have found no County Code violations.[6] Nonetheless, the Plaintiffs strenuously argue that Defendant's Pole Building and its use are illegal under the County Code. They seek injunctive relief directing the Defendant to tear down the Pole Building and to cease working on cars on his property.[7] While I have already found that the use of the property by Williams is not a nuisance under the common law, the Plaintiffs contend that Defendant's pursuit of auto repair is a nuisance *per se*, for which they also seek equitable relief. For the reasons that follow, I find for the Defendant.

---

[6] All parties argue that the actions of the County support their positions in this matter. The Defendant points out that the County has made numerous inspections of his property in response to complaints from the Plaintiffs, and has never found a violation of the County Code. He also points to a hearing for a variance to permit him to maintain a commercial garage on the premises; that application was turned down, but the Sussex County Planning and Zoning Commission told the Defendant that the current hobby-use was permitted under the Code. The Plaintiffs, conversely, point to technical deficiencies with the building permit and the certificate of occupancy, and take issue with other actions of the County. I need not consider any of these issues, as the County is not a party to this action.

[7] The Plaintiffs also seek a declaratory judgment that the Defendant is in violation of the law. They originally sought "civil fines" for these violations, but have not pursued this claim. Finally, the Plaintiffs seek their attorney's fee and costs in connection with this action, a request the result here renders moot.

## II. ANALYSIS

### A. Violations of the Building Code

The Plaintiffs have alleged that Defendant's Pole Building violates the Building Code in a number of ways. Plaintiffs' allegations of breach of the County Code have been something of a moving target throughout the litigation; I address here (and in my discussion of the Zoning Code, *infra*) only allegations and arguments set out in Plaintiffs' Post-Trial Briefs; I deem issues not so raised to be waived.[8] The County has adopted the International Building Code and the International Residential Code as its Building Code.[9] The Plaintiffs allege three Building Code violations testified to by their expert, James Clark: that Code requirements call for a fire prevention wall between the Pole Building and Defendant's adjoining residence, which the expert contends is missing; that the Pole Building's roof trusses have been modified in a way not compliant with the Code; and that the Shop's floor is not properly sloped. I assume without finding, for purposes of this Memorandum Opinion, that one or more Building Code violations exist with respect to the Pole Building. I now turn to the issues of Plaintiffs' standing and the availability of the remedy sought.

---

[8] *See, e.g.*, *Thor Merritt Square, LLC v. Bayview Malls LLC*, 2010 WL 972776, at *5 (Del. Ch. Mar. 5, 2010); *Emerald P'rs v. Berlin*, 2003 WL 21003437, at *43 (Del. Ch. Apr. 28, 2003); *In re IBP, Inc. S'holders Litig.*, 789 A.2d 14, 62 (Del. Ch. 2001).

[9] Sussex County Code, Building Construction, Article I, Chapter 52-1 Adoption of Standards; Exemptions.

4

1. <u>Standing</u>

The Defendant contends that the Plaintiffs lack standing to bring these claims. The standing requirement serves to protect litigants, the courts, and the public from abusive litigation by officious intermeddlers. In order to have standing to compel a court to address compliance with a statute, a plaintiff must generally (1) plead a claim of injury-in-fact arising from the non-compliance and (2) demonstrate that the interest sought to be protected is within the zone of interest which the statute seeks to address.[10] Here, assuming the record demonstrates that the trusses, floor or wall materials of the Pole Building are not up to Code, a detriment to the *Defendant himself* and his family may result. But—unlike with the allegedly-illegal *use* of the building, discussed below—the Plaintiffs have not attempted to substantiate any claim of injury-in-fact.

In post-trial and supplemental briefing, the Plaintiffs fail to argue that they have sustained an injury-in-fact with respect to Defendant's violation of the Building Code. They rely solely on what they argue is the General Assembly's provision of statutory standing here. The Plaintiffs point to 9 *Del. C.* § 6919(d) which provides:

> [i]n case any building or structure is or is proposed to be erected, constructed, reconstructed, altered, maintained or used, or any land is or is proposed to be used *in violation* of this subchapter or *of any regulation* or provision of any regulation or change thereof, *enacted* or adopted by the county government *under the authority granted by this subchapter*, the county government, the attorney thereof, or *any owner*

---

[10] *E.g.*, *Walker v. City of Wilmington*, 2014 WL 4407977, at *4 (Del. Ch. Sept. 5, 2014).

5

*of real estate within the county in which such building, structure or land is situated*, may, in addition to other remedies provided by law, institute injunction . . . or any other appropriate action . . . to prevent, enjoin, abate or remove such unlawful erection, construction, reconstruction, alteration, maintenance or use.[11]

This statutory language provides a private right of action with respect to violation of regulations under the subchapter in which it appears—concerning *the County Zoning Code*. The Plaintiffs appear to conflate a private right of action to enforce zoning restrictions with standing to enforce all regulations concerning buildings and structures. The language of Section 6919(d) does not support such a legislative intent, however.[12]

9 *Del. C.* § 6902 contains a specific grant to the County of the authority, within the County, to

> regulate the location, height, bulk and size of buildings, parking areas, and other structures, the percentage of lot which may be occupied, the size of yards, courts and other open spaces, the density and distribution of population, the location and uses of buildings, parking areas, and structures for trade, industry, residence, parking, recreation, public activities or other purposes and the uses of land for trade,

---

[11] 9 *Del. C.* § 6919(d) (emphasis added).

[12] The Plaintiffs cite to numerous cases for the proposition that Section 6919(d)—or its New Castle or Kent County analogs—provides standing here, but none of those cases involve enforcement of the County Building Code. *See, e.g.*, *Oceanport Indus. Inc. v. Wilmington Stevedores, Inc.*, 636 A.2d 892 (Del. 1994); *O'Neil v. Town of Middletown*, 2006 WL 205071 (Del. Ch. Jan. 18, 2006); *Breasure v. Swartentruber*, 1993 WL 487786 (Del. Ch. Nov. 1, 1993); *Orchard Homeowner's Ass'n v. Cnty. Council of Sussex Cnty.*, 1992 WL 71448 (Del. Ch. Mar. 31, 1992); *Lajil Corp. v. Maryland Bank*, 1988 WL 39975 (Del. Ch. Apr. 25, 1988); *Hammond v. Dutton*, 1978 WL 22451 (Del. Ch. Dec. 20, 1978); *Minquadale Civic Ass'n v. Kline*, 212 A.2d 811 (Del. Ch. 1965); *Nichols v. State Coastal Zone Indus. Control Bd.*, 2013 WL 1092205 (Del. Super. Ct. Mar. 14, 2013); *Plumbers & Pipefitters Local Union 74 v. Gordon*, 1999 WL 169413 (Del. Super. Ct. Mar. 17, 1999).

industry, residence, recreation, public activities, water supply conservation, soil conservation or other similar purposes [outside incorporated towns and cities].[13]

As our Supreme Court has noted, this language provides the County with the authority to regulate *zoning*.[14] Section 6919 provides a private right of action for County property owners to seek to remedy acts "in violation . . . of any regulation . . . enacted or adopted by the county government under the authority granted by *this subchapter*."[15] The subchapter in question is Subchapter I of Chapter 69, pertaining to zoning, and the grant of authority referenced is that quoted at length above, delegating to the County the power to regulate aspects of zoning. It does not provide authority to regulate methods and standards for construction of buildings.[16]

The Plaintiffs, by contrast, seek to regulate alleged violations of the International Residential Code, adopted by Sussex County in Section 52-1 of the Sussex County Code.[17] The County's authority to adopt a building code does not

---

[13] 9 *Del. C.* § 6902(a).

[14] *Delaware Dep't of Nat. Res. & Envtl. Control v. Sussex Cnty.*, 34 A.3d 1087, 1090 (Del. 2011).

[15] 9 *Del. C.* § 6919(d) (emphasis added).

[16] *See Plumbers & Pipefitters Local Union 74 v. Gordon*, 1999 WL 169413, at *4 (Del. Super. Ct. Mar. 17, 1999), *aff'd in part, rev'd in part,* 757 A.2d 1278 (Del. 2000) (considering whether the New Castle County analog of 9 *Del. C.* § 6919(d) provides standing for alleged plumbing code violations). In stating the obvious, that the Building Code regulations that Plaintiffs seek to enforce here were not "enacted . . . under the authority granted" by 9 *Del. C.* § 6901 *et. seq.*, I do not mean to imply that the County's power to regulate building or zoning is limited to the grant of authority under that Subchapter. *See generally* 9 *Del. C.* § 7001 (granting to the County all state police powers not denied by statute).

[17] Sussex County Code, Building Construction, Article I, Chapter 52-1 Adoption of Standards; Exemptions.

7

flow from 9 *Del. C.* § 6902, which delegates authority only to regulate zoning;[18] instead, the County's authority to adopt building codes is set out specifically at 16 *Del. C.* § 7601, which provides in pertinent part that the ". . . County Council of . . . Sussex County may adopt and enforce building codes . . . ." That statute is silent as to a private right of action and standing, as are the regulations adopted by the County pursuant to Section 7601, which adopt the International Residential Code, and provide that "[e]nforcement of the code will be the responsibility of the Director of Assessment."[19] I conclude that no statutory standing exists with respect to enforcement of the Building Code as adopted by Sussex County.

To find, as the Plaintiffs argue, that all property owners in Sussex County have standing to enforce the Building Code would, I fear, result in inefficient and pernicious litigation.[20] The Plaintiffs can show no injury-in-fact, and have pointed to no statutory provision conferring statutory standing or even a private right of

---

[18] *See Delaware Dep't of Nat. Res. & Envtl. Control.*, 34 A.3d at 1090.

[19] Sussex County Code, Building Construction, Article I, Chapter 52-7 Enforcement Officials.

[20] Consistent with Plaintiffs' view of the law, the owner of a beach house on Slaughter Beach would have standing to sue to enforce the adequacy of the circuit breakers in a barn in Delmar, or a deficiency in the scantlings of the roof rafters of a corn crib in Woodenhawk. Such a reading would allow precisely the kind of officious intermeddling, nuisance and strike suits that the standing requirement is intended to prevent. While the examples above are *reductios ad absurdum*, they are not so far off the mark here. I am sure that Plaintiffs' complaints about traffic, noise and odor caused by Williams' hobby are sincere (despite the fact that I found these intrusions fail to constitute a nuisance-in-fact). Just as clearly, however, the Plaintiffs have no interest in the structural integrity of Williams' Pole Building; their arguments with respect to Williams' compliance with the Building Code—discovered, presumably, during the pendency of this action—are simply a cudgel with which to beat the Defendant unrelated to any injury-in-fact the Plaintiffs might have suffered.

action for individuals to enforce the Building Code. I conclude that they lack standing here. As discussed below, they cannot obtain the remedy they seek in any event.

### 2. Injunctive Relief

Assuming that the Plaintiffs have standing and that the Pole Building exists in violation of the Building Code, the Plaintiffs have demonstrated only the first of three prongs required in order to receive the permanent, mandatory injunction they seek. According to the Pre-trial Stipulation and Order, the "Plaintiffs seek a mandatory injunction ordering [the Defendant] to remove the Pole Building."[21] A mandatory injunction is an extraordinary equitable remedy; in order to receive final injunctive relief, a plaintiff must not only prevail on the merits, but must show resulting irreparable harm and that the equities balance in her favor.[22] With respect to the Building Code violations, the Plaintiffs can show neither, for the same reason that their standing is problematic—they cannot demonstrate injury to themselves resulting from Building Code violations in Williams' Pole Building.

---

[21] In the alternative, the Plaintiffs seek a mandatory injunction that "requires the Pole Building to be altered in such a manner as to prevent it from being used as a garage." This alternative relief is not addressed, obviously, to remedy the *Building Code* violations—it is directed to the *use* of the building in purported violation of the Zoning Code, addressed in this Memorandum Opinion, *infra.*
[22] *See, e.g.*, *Singh v. Batta Envtl. Associates, Inc.*, 2003 WL 21309115, at *9–10 (Del. Ch. May 21, 2003)*; *Copi of Delaware v. Kelly*, 1996 WL 633302, at *4 (Del. Ch. Oct. 25, 1996); *Draper Commc'ns, Inc. v. Delaware Valley Broadcasters Ltd. P'ship*, 505 A.2d 1283, 1288 (Del. Ch. 1985).

Put another way, the Plaintiffs are not seeking an order that the Shop be brought into Code compliance, which, if their expert is correct, would require relatively modest alteration to the structure. In fact, if Williams tomorrow brought the building up to Code, the Plaintiffs would be entirely unsatisfied; their real complaint is with the use of the Shop for auto repair, not the allegedly non-Code-compliant slope of its floor. To that end, they seek an order *to remove the Pole Building itself.* Equity cannot support such mandatory injunctive relief absent a showing of tangible harm in its absence.

*B. Alleged Zoning Code Violations*

### 1. The Defendant's "Signs"

The Defendant has mounted a number of antique and decorative signs on his property, mostly attached to the Shop. He has other automotive-type ornaments on his property as well, such as a traffic signal. The Plaintiffs make an argument that the signs are prohibited under the Zoning Code. The Plaintiffs allege that the signs with which the Defendant has decorated his property are not "signs permitted" under Sections 115-159 or 115-159.1. That argument is frivolous. "Sign" is a defined term under the Zoning Code. Section 115-157 provides that a "sign" is "[a] structure, display or device that is arranged, intended, designed or used as an advertisement, announcement, identification, description or direction." The antique, decorative signs that the Defendant has displayed on his property are none of these.

10

They are not intended to convey information; instead, they are purely ornamental. Defendant's neighbors may find these signs attractive, kitschy, or downright obnoxious, according to their tastes. Nothing in the Code, however, prevents their display.

### 2. "Use"

The more serious of Plaintiffs' statutory arguments involve allegations that Williams' use of the Shop violates the Zoning Code. Again, although various allegations of zoning violations have been made in this litigation, I address only those raised in the post-trial briefing, and consider those not so raised, waived.[23] The Plaintiffs complain that Williams' use of the property to work on automobiles is prohibited under the Zoning Code.[24] I start my analysis with two competing propositions. The first is that the Zoning Code is in derogation of the common law. At common law, otherwise-lawful activities by a landowner on his property were limited only insofar as they invaded the property rights of his neighbors—that is, they were limited under nuisance doctrine.[25] Imposition of zoning restrictions further limits this use, by legislative fiat, under the rubric that orderly development enhances aggregate quality of life and property value. As acts in derogation of

---

[23] *See* cases cited *supra* note 8.

[24] At one time, the Plaintiffs argued that the size of the Pole Building in the abstract (unconnected with its use for auto repair) was not Code-compliant. This allegation was not pursued post-trial, and I consider it waived.

[25] I have already found that Williams' use of his property does not amount to a public or private nuisance-in-fact. I discuss nuisance *per se infra*.

11

common-law property rights, zoning codes must be read in such a way as least burdens those rights; as this Court has noted, where multiple reasonable readings of zoning code provisions are possible, "the interpretation that favors the landowner controls."[26] Second, the Zoning Code is explicitly comprehensive; it provides that all uses not permitted are prohibited.[27] I reconcile these considerations by finding that if the Zoning Code may reasonably be read to permit a use, it is permitted; otherwise, it is prohibited.

The Plaintiffs point out that Section 115-20 and 115-21(B) provide the permitted uses for lots of less than five acres in the AR-1 District.[28] Those include use for a detached single-family dwelling of the type located on Defendant's property, together with accessory uses including (among others) use for a "Private Garage," for "domestic storage" or as a "Home Occupation." The Plaintiffs argue that Williams' use of the Shop is as a garage, they then point to the fact that the Zoning Code for District AR-1 provides only for "private garages" used solely for "storage." The Plaintiffs point out that Williams uses his Shop for maintenance and

---

[26] *Norino Properties, LLC v. Mayor & Town Council of Town of Ocean View*, 2011 WL 1319563, at *1 n.9 (Del. Ch. Mar. 31, 2011) (citations omitted); *see also Dewey Beach Enters., Inc.,* 1 A.3d 305, 310 (Del. 2010) ("[T]o the extent that there is any doubt as to the correct interpretation [of a zoning ordinance], that doubt must be resolved in favor of the landowner.").

[27] Sussex County Code, Zoning, Article III, Chapter 115-15 Prohibited Uses ("For the purpose of this chapter, permitted uses are listed for the various districts. Unless the contrary is clear from the context of the lists or other regulations of this chapter, uses not specifically listed are prohibited.").

[28] *See* Pls' Post-Trial Opening Br. 29–32; Pls' Post-Trial Reply Br. 10–20.

repair, and not just storage, of automobiles.[29]   Therefore, argue the Plaintiffs, the

Shop is a non-compliant private garage, and they are entitled to an order from this

Court abating this illegal use.   I find, however, that Defendant's use of the Pole

Building is permitted as a "Home Occupation."   "Home Occupation," a permitted

AR-1 use, is defined in Section 115-4 of the Code as

> [a]ny occupation . . . or activity, conducted [in the home or accessory
> structure] solely by one or more members of a family on the premises,
> which is incidental and secondary to the use of the premises for
> dwelling, provided that no commodity is stored or sold, except such as
> is made on the premises, and there shall be no group instruction,
> assembly or activity and no outside storage or display material on the
> premises.

I find that the hobby activity which the Defendant pursues in his Shop is such a home

"activity."

The Plaintiffs argue that Williams' use of the Shop cannot qualify as a Home

Occupation for several reasons.   First, they point out that Home Occupations can

only be pursued in the dwelling or an "Accessory Building," which is defined in the

Code as subordinate to the dwelling.[30]   The Plaintiffs point out that the Shop is bigger

than the modest house trailer in which Williams resides, and argue that it cannot be,

---

[29] They also point out that the Pole Building substantially exceeds the size permitted for a "Private Garage."

[30] Sussex County Code, Zoning, Article I, Chapter 115-4 Definitions and Word Usage (defining "Accessory Building" as "[a] detached/unattached subordinate building, the use of which is incidental to or customarily found in connection with and, except as otherwise provided in this chapter, is located on the same lot as the main building or principal use of the land.  Examples of an accessory building may include a shed, a storage building, garage, gazebo or similar structure.").

13

therefore, a "subordinate" Accessory Building. I find, based on the facts here, that Defendant's primary use of his land is as a residence, and that his pursuit of his hobby in the adjacent Shop—which is not his occupation or a commercial activity, but merely a hobby or pass-time activity—is subordinate to that primary use, notwithstanding the size of the Pole Building. Similarly, I find the hobby use of the Shop "incidental and secondary" to the primary use of the property as a residence, for purposes of the definition of use for a Home Occupation under Section 115-4. Next, the Plaintiffs argue that Williams runs afoul of the "outside storage or display"[31] prohibition of Section 115-4, because cars are at times parked outside the Shop in Williams' driveway. That is not the type of outside storage prohibited by the Code, which refers to storage of material visually connected to the Home Occupation itself, and not incidental to the use of the property for residential purposes.[32] Also, the Plaintiffs point out that Section 115-4 provides that the Home Occupation must be pursued "solely" by family members, and prohibits "group instruction, assembly or activity" on the premises in connection with the Home Occupation. The Plaintiffs argue that the fact that the Defendant at times allows his friends to work on cars while he watches (or helps) violates these provisions.

---

[31] The prohibition in the Zoning Code of "outside display material," in connection with a Home Occupation, I take to be a prohibition on signage advertising a home business, which is absent here.

[32] Of course, if Williams begins storing tires, say, or axles or engine blocks in his yard, a Code violation would likely result.

However, that fellowship, as the evidence makes clear, is part of the activity that Williams, himself, is pursuing. Nothing about allowing guests to participate in the hobby arises, in my view, to a "group instruction, assembly or activity" that is illegal under the Code, nor does it make the activity less amenable to the purposes of AR-1 zoning than if Williams alone turns the wrenches.[33] To the extent that Section 115-4 could be read to prohibit an otherwise permitted activity because the property owner invites friends to participate, that is not the only reasonable reading of the Section, and I must interpret this Section in favor of the burdened landowner. I find that Williams' use of the Pole Building as a shop to work on cars with his friends is not prohibited by the Zoning Code.

Section 115-4 allows incidental use of property in AR-1 in addition to its use for dwelling and agricultural purposes. It permits profit-making activity by residents, within strict limits (no group assembly or activity, no outside storage or signage, no sale of commodities not made on the premises). It also operates as a catch-all, to make sure that hobby activities incidental to residential use are permitted. The Defendant is not running an auto repair business;[34] and he has no

---

[33] The regulatory purpose for designation of AR-1 districts is provided at Section 155-19 of the Zoning Code, set out in full on page eighteen, *infra*.

[34] Nor, I note, could he operate an auto repair business, under my analysis here of a Home Occupation pursued in an Accessory Building. The definition of Accessory Building requires a use which is "incidental or customarily found in connection with . . . the main building or principal use of the land." If the Defendant were to run an auto repair business in the Pole Building, such use would not be "customarily found in connection with" his dwelling house or his primary use of the land as a residence, nor would it be "incidental," which would also run afoul of the "incidental

15

"employees" from within or without his family. The testimony at trial made it clear that he enjoys working on his friends' vehicles in his Shop and enjoys sharing their company while he does so. In pursuing this hobby inside his Pole Building, the Defendant is pursuing a permitted Home Occupation under the Zoning Code.

### C. Nuisance Per Se

Finally, the Plaintiffs contend that Defendant's work on automobiles in the Pole Building constitutes a nuisance *per se*. Unlike common-law nuisance-in-fact, demonstration of a right to remedy a nuisance *per se* does not require a showing by the Plaintiffs that they are suffering an actual interference with the quiet enjoyment of their property. Instead, a nuisance *per se* arises when (1) a defendant property owner's use of his property is in violation of a safety statute, (2) where the use is an abnormal or hazardous activity or (3) where the Defendant intentionally interferes with others' quiet enjoyment of their property in a way that is clearly unreasonable.[35] Here, any interference with Plaintiffs' property rights caused by the Defendant is incidental, not intentional, and tinkering with automobiles is neither abnormal nor hazardous activity. Plaintiffs' argument is that conducting auto repair in an AR-1

---

and secondary" requirement for a Home Occupation. In other words, pursuing a pass-time or hobby at home is typically incidental to residential use; running an auto repair business is not. Moreover, an auto repair business would violate the Comprehensive Land Use Plan for Low Density Areas, which prohibits "intense *commercial* uses . . . such as auto repair" (emphasis added) (all lands designated as Low Density Areas were, as of 2008—the year of adoption of the Comprehensive Land Use Plan—zoned AR-1).

[35] *E.g.*, *Artesian Water Co. v. Gov't of New Castle Cnty.*, 1983 WL 17986, at *14 (Del. Ch. Aug. 4, 1983).

District is illegal under the County Code, thus pursuit of that activity is a nuisance *per se.* But it is not the violation of any statute or regulation that supports a finding of which results in a nuisance *per se*; only violations of statutes *intended to protect the public safety* lead to application of the nuisance *per se* doctrine. Properly understood, the doctrine of nuisance *per se* is a limitation on property rights: it applies where a landowner is using his property in a way that is hazardous in fact, or hazardous as found by a legislature in promulgating safety statutes. In such a situation, a neighbor need not await resulting damage or interference with his own property rights to obtain relief, he may abate the threat under the doctrine of nuisance *per se.*[36] Since I have found no County Code violations here, I need not consider nuisance *per se* further. Even if the Plaintiffs had shown a zoning violation, however, the doctrine would not apply here.

The Zoning Code is intended to produce orderly development in a way that enhances quality of life and aggregate property values. The Plaintiffs contend that Williams' use of his property exceeds the use permitted by the Zoning Code in an "AR-1" District; the purpose of designation of a district as "AR-1" is set out at Section 115-19:

---

[36] *See McQuail v. Shell Oil Co.*, 183 A.2d 581, 584 (Del. Ch. 1962) (explaining that an injunction to restrain an anticipatory nuisance is unavailable except where the proposed use is a nuisance *per se*). Similarly, the tortfeasor is held strictly liable for damages resulting from such activity. *See Artesian Water Co.*, 1983 WL 17986, at \*20; *Latchford v. Schadt*, 2001 WL 392254, at \*3 (Del. Super. Ct. Apr. 11, 2001).

17

[t]he purpose of these districts is to provide for a full range of agricultural activities and to protect agricultural lands, as one of the county's most valuable natural resources, from the depreciating effect of objectional, hazardous and unsightly uses. They should also protect established agricultural operations and activities. These districts are also intended for protection of watersheds, water resources, forest areas and scenic values and, at the same time, to provide for low-density single-family residential development, together with such churches, recreational facilities and accessory uses as may be necessary or are normally compatible with residential surroundings. The AR regulations seek to prevent untimely scattering of more-dense urban uses, which should be confined to areas planned for efficient extension of public services.[37]

I conclude that the provisions of the Zoning Code that the Plaintiffs allege Williams has violated are not Code provisions intended to protect their safety. Thus, violations of those Code provisions, if such violations exist, are insufficient to support a finding of nuisance *per se*.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs' request for an injunction to remove Defendant's Pole Building is DENIED. Plaintiffs' request to enjoin the use of that building for the non-commercial enjoyment of the Defendant, by its use for hobby auto maintenance and repair, is DENIED. Plaintiffs' request that I order the Defendant to remove the ornamental signs on his property is DENIED. The Plaintiffs have failed to establish that the Defendant has created a nuisance *per se*, and no relief under that theory is available to the Plaintiffs. Plaintiffs' request that

---

[37] Sussex County Code, Zoning, Article IV, Chapter 115-19 Purpose.

18

the Defendant pay their legal fees is DENIED. The parties should provide me with a form of Order encompassing the findings of this Memorandum Opinion together with those in my Memorandum Opinion of June 23, 2016.