The CITIZENS COALITION, INC., Plaintiff,

v.

COUNTY COUNCIL OF SUSSEX COUNTY, et al., Defendants.

C.A. No. 1976–S.

Court of Chancery of Delaware, Sussex County.

Submitted: May 25, 2000.

Decided: July 21, 2000.

David L. Finger, Wilmington, for plaintiff.

Craig A. Karsnitz, Young, Conaway, Stargatt & Taylor, LLP, Georgetown, for defendants Bryce M. Lingo and T. William Lingo.

Richard E. Berl, Jr., Richard E. Berl, Jr., P.A., Georgetown, for defendant County Council of Sussex County.

## OPINION

LAMB, Vice Chancellor.

### I.

The plaintiff in this action, The Citizens Coalition, Inc., is a non-profit organization open to all residents of Sussex County, which seeks to preserve the quality of life in the Milton–Lewes–Rehoboth–Dewey area of Delaware. The Coalition claims violations of its and its constituency's constitutional due process rights with respect to the approval on December 22, 1998, by defendant County Council of Sussex County of a rezoning application filed by defendants Bryce M. Lingo and William T. Lingo. By Opinion dated July 22, 1999, I dismissed the plaintiff's substantive due process claims for lack of standing, but allowed its procedural due process claims to proceed.[1] Now pending are the parties' cross-motions for summary judgment.

During oral argument, held on May 25, 2000, plaintiff advised the court that its claims rest on one issue. Coalition claims constitutionally inadequate notice of a revision to the proposed development plan filed in connection with the rezoning application. The original plan included an 80–foot wide strip labeled as a "buffer." The revised plan labels that area as a multi-modal corridor, contemplating a road and/or bikeway that the Delaware Department of Transportation ("DelDot") may in

---

1. *The Citizens Coalition, Inc. v. County Council of Sussex County,* Del.Ch., C.A. No.1976–S, Lamb, V.C. (1999).

the future seek to construct. Because the record unequivocally shows that the Coalition and its constituency in fact had adequate notice of this accommodation for DelDot's benefit, I will grant defendants' motion for summary judgment and deny plaintiffs' cross-motion.

## II.

### A. The Rezoning Application

On September 10, 1998, the Lingos filed a rezoning application with respect to their 62.6 acre parcel of land lying northeast of Hebron Road, 1800 feet northeast of Route 1 and west of the Lewes and Rehoboth Canal (the "Property"). The Lingos sought to convert the Property's classification from AR–1 (Agricultural Residential) to a combination of MR (Medium Density Residential) and RPC (Residential Planned Community). The Lingos' application included a preliminary subdivision plan, showing their proposal to develop on the Property 105 single-family lots, 38 duplex lots, and 52 townhouse lots. The preliminary plan was filed with the Planning & Zoning Department and made available for public review some two months before the first of the public hearings at issue.

Besides outlining the proposed development, the preliminary plan showed an 80–foot right-of-way, labeled as a "buffer," extending through the southern portion of the property and ending at Route 1. Earlier in the summer, DelDot had learned of the Lingo's intent to seek rezoning and corresponded with Lawrence B. Lank, the Director of the Sussex County Planning & Zoning Commission, with respect to DelDot's concerns pertaining to any such plan. At first, DelDot explained that it would require a traffic impact study in connection with the anticipated proposal. After learning the details about the proposal, however, DelDot made clear that no study would be necessary. DelDot also discussed two potential projects identified by the "Route 1 Corridor Study," a study focused on alleviating certain traffic problems on Route 1. Specifically, DelDot explained that it may in the future propose a bikeway or road, possibly in the area of the 80–foot buffer marked off on the preliminary plan. In light of its potential interest in establishing a road in the future, DelDot objected to the preliminary plan to the extent it failed to provide a dedicated right-of-way to accommodate those plans. Michael Tyler, the president of the Coalition, was a member of the Route 1 Corridor Study Advisory Committee, and, thus, knew about DelDot's potential interest in establishing a road or bikeway in that general area.[2]

### B. The November 19, 1998 Hearing

On October 4, 1998, the County gave public notice of hearings to discuss the Lingos' proposal to be held before the Planning & Zoning Commission on November 19, 1998 and County Council on December 15, 1998. The notices advised the public of the "place at which the text and maps relating to the proposed change may be examined."[3]

On November 12, 1998, David S. Hugg, III, State Planning Coordinator, sent a letter to the Commission, indicating the State's opposition to approval of the preliminary plan, principally due to DelDot's interest in assuring that a right-of-way is dedicated to these possible future projects.

---

**2.** Tyler submitted an affidavit in which he explained that although he participated in the discussions regarding a road, he never learned precisely where the possible future road might be located.

**3.** 9 *Del.C.* § 6812.

On November 19, 1998, DelDot faxed another letter to Mr. Lank.[4] DelDot referred specifically to its prior objection to the preliminary plan and states as follows:

> Please be advised that our concerns, as expressed in [the prior] letter, have been adequately addressed and that in those regards we do not object to the County's approving this project.
>
> . . .
>
> As you may know, our Route 1 Corridor Study has identified two projects that would, in part, follow Church Street and the railroad right-of-way just mentioned.... Exact alignments, and indeed typical sections, for these facilities have not been finally determined, but we can be certain at this point that they would pass through the south portion of this project, possibly as a single multimodal facility.
>
> We have now received a plan that shows an 80–foot wide right-of-way along the south edge of the project for the purpose of accommodating that facility. Dedicating that right-of-way would adequately address our concerns with regard to this project.

On November 19, 1998, the Commission held its properly noticed public hearing to consider the Lingos' application. At that time, Lank spoke for the Commission, indicating receipt of the fax from DelDot and his understanding that DelDot withdrew its initial objection to the proposal because the Lingos agreed to dedicate the right-of-way to allow for DelDot's potential future use of the property. After Lank spoke, the Lingos' attorney outlined the plan for the audience, including reference to the

potential bikeway and road. He specified to the audience where on the present map the right-of-way would be found. He also explained that because the Lingos can dedicate their own land and no other, if DelDot is to bring its plan to fruition, it will have to acquire additional land.

At the conclusion of his comments, the Lingos' attorney submitted into the record a letter discussing in greater detail the substance of his comments. He explained that he could not submit the letter at an earlier date, because DelDot's and the State's objections were only withdrawn on the day of the hearing. In that letter, the Lingos discuss their changed plans for the 80–foot right of way. They state that DelDot indicated its interest in establishing a bikeway or road through the southern portion of the project and asked the Commission to reject the proposal absent dedication of a right-of-way for that purpose. The Lingos' letter states that

> "[n]otwithstanding the fact (1) that DelDot's plans are not finalized, and indeed may never become finalized, and (2) that Del–Dot's plans and demands ... amount to an inverse condemnation of the Lingos' property, the Lingos' have taken Del–Dot's plans into consideration by establishing an 80 foot "open area" .... This would allow Del–Dot, assuming it finalizes its plans for a bikepath and road, to use the "open area" ... in the future without preventing Sussex County and the Lingos from exercising their right to develop their property...."[5]

Following further comments, both in support of and against the proposal, Tyler

---

**4.** In his affidavit, Tyler asserts that certain documents were not included in the record until mid-December 1998. In addition to being mailed, these letters were faxed to Mr. Lank of the Commission. Plaintiffs do not dispute that these letters were faxed and pro-

vide insufficient basis to conclude that they were not properly placed into the public record.

**5.** Def.Ex. 10 at 4.

made known the objections of The Citizens Coalition. The Commission deferred its decision until a later date.

The Commission is empowered only to preliminarily approve relevant proposals, and its findings are not binding on the County Council. On December 10, 1998, the Commission released its position, which would allow the plan to go forward, but suggested that the number of lots proposed (195) be reduced to 155.

## C. The December 15, 1998 Hearing

In response to the Commission's comments and the concerns raised at the November 19 hearing, the Lingos revised their proposal to provide for 177 lots, consisting of 99 single-family lots, 26 duplex lots and 52 townhouse lots. At the December 15, 1998 meeting of the County Council, the Lingos' revised map was placed on an easel at the front of the room.[6] In connection with that meeting, Tyler submitted a letter on behalf of the Coalition, again explaining the bases for its opposition to the proposal. Again, the hearing involved comments in favor of and opposed to approval of the plan, including Tyler's objections. On December 22, 1998, at a regularly scheduled meeting, the Council again addressed the Lingos' proposal and adopted by a vote of 3 to 1 (with one abstention) Ordinance No. 1279, granting the Lingos' rezoning application, subject to 14 conditions not relevant to this proceeding.

The core of plaintiff's original procedural due process claims are summed up in the following paragraph of their complaint:

The action of the Council in adopting Ordinance No. 1279 was illegal and a violation of due process in that by failing to make available for public inspection maps and text that were relied upon by the Lingos and the Council at the Council meetings on December 15 and December 22, 1998, the Council violated 9 *Del.C.* § 6812. The proposal presented to and voted upon by the Council differed in several material aspects from the proposal submitted to the public file, including (i) altered road placement and traffic pattern, including the creation of a road that does not currently exist, and (ii) changes in the location, number and type of housing. This information, along with an SR 1 Grid Concept Program map and text developed by [DelDot] which was relied upon by the Council, was never made available for public inspection.[7]

At oral argument, plaintiff specifically advised the court that its claim now rests solely on the allegation that the public received inadequate notice of the revision to allow for the 80 foot "multi-modal corridor" that may in the future be used for a road or bikeway.

## III.

### A. Standard for Summary Judgment

A motion for summary judgment will be granted when no genuine issue as to material fact exists and the moving party is entitled to judgment as a matter of law.[8] The moving party has the burden of proving that no material factual dispute exists, and the court will resolve

---

**6.** Tyler's affidavit indicates that for most of the hearing, the easel faced the panel instead of the audience. However, at some point it was clearly repositioned to face the audience and there is no explanation why the public could not approach the easel for closer inspection.

**7.** Comp. ¶ 10.

**8.** Ct.Ch.R. 56(c); *Gilbert v. El Paso Co.*, Del. Supr., 575 A.2d 1131, 1142 (1990).

doubts in the non-movant's favor.[9] In the context of cross-motions for summary judgment, neither of the cross-movants necessarily concedes the absence of material factual disputes that may preclude summary judgment in favor of the other party.[10] At oral argument, however, the parties to this action substantially agreed that there exists no material fact precluding a final judgment in this matter.

## B. The Right to Due Process

■ When enacting or amending zoning ordinances, the Council must provide its citizens with procedural due process, i.e., adequate notice of the matter to be decided and an opportunity to be heard.[11] The specific procedures required to satisfy the public's right to procedural due process in connection with zoning changes in Sussex County are set out in 9 *Del.C.* §§ 6812, 7002(m). Two hearings are conducted, one before the Commission and one before the County Council. The public receives at least 15 days notice of both hearings and is afforded an opportunity to be heard. The Sussex County Planning & Zoning Department maintains a public file of each rezoning application, including all submissions connected therewith, which is available to members of the public. The County Council is authorized to approve a zoning ordinance that differs from the Commission's recommendation.

The parties argue over the standard applied to determine whether the County has complied with the constitutional and statutory requirements. Plaintiffs say that under *Carl M. Freeman & Assoc., Inc. v. Green,* a strict compliance standard applies.[12] Defendants argue that *Mitchell v. Board of Adjustment of Sussex County,* though perhaps not binding precedent, at least provides a clear and carefully reasoned basis to require only substantial compliance with the due process and notice requirements.[13]

■ I find it unnecessary to resolve this question since plaintiff's claim fails even under the stricter standard. Plaintiff's counsel conceded at oral argument that even under the strict compliance standard of *Freeman,* certain changes to a proposal are so plainly immaterial that they cannot possibly require resetting the 15–day notice period. As discussed below, I am convinced that the change at issue here fits into this category. The public (and plaintiff) had ample notice of the Lingo's acquiescence to DelDot's demand for a right-of-way. The subsequent modification of the map depicting the project to reflect that acquiescence is simply not a material change requiring an additional time to satisfy due process.[14]

## C. The Public Record

■ Plaintiff argues that the Lingos' revision of their proposal shortly before the

9. *See Brown v. Ocean Drilling & Exploration Co.,* Del.Supr., 403 A.2d 1114, 1115 (1979).

10. *United Vanguard Fund, Inc. v. TakeCare, Inc.,* Del.Supr., 693 A.2d 1076, 1079 (1997).

11. *County Council of Sussex County v. Green,* Del.Supr., 516 A.2d 480, 481 (1986).

12. Del.Supr., 447 A.2d 1179 (1982).

13. Del.Super., C.A. No. 96A–06–001, 1997 WL 364071, Lee, J. (Apr. 17, 1997), *rev'd on*

*other grounds,* Del.Supr., 706 A.2d 1027 (1998).

14. Not every change in a proposal for rezoning that occurs during the hearing process requires the County to give a renewed notice, or the process might never come to an end. This case does not require that I explore the limits of this truism because the change made in the map at issue here (i.e., to reflect the earlier concession to DelDot) clearly did not work a material change in the proposal.

December 15, 1998 hearing required that the 15–day notification period be reset. Plaintiff asserts that "[t]here is no material dispute that there was no prior indication in the public file that a road would be built, where previously there would have been a 'buffer.' Thus, the mandatory requirements of 9 *Del.C.* § 6812(a) were not satisfied, and the adoption of the Ordinance is void."

It is clear that the original plan submitted by the Lingos in September 1998 included an area labeled as a "buffer." Did the public receive adequate notice that the Lingos accommodated DelDot, and revised the proposal to turn that "buffer" into a "multi-modal corridor"?

I first note that this claim involves a hypothetical road. DelDot may never reach a final decision about creating a road. It is clear that DelDot's position regarding the proposal was simply an effort to ensure that if *DelDot decides to build the road at some time in the future,* it will be able to do so more cheaply and easily. Critically, the Lingos' decision to label a right of way as a potential road will have no impact on the public's right to a hearing if and when DelDot chooses to create that road. While the Lingos may be barred from challenging DelDot's decision, whatever right the public may have to notice and an opportunity to be heard is unchanged.[15]

This leads me to the core of plaintiff's claim, specifically, that the public was surprised by the change of plans. I cannot agree. The record makes clear that Tyler and the Coalition had actual knowledge of the Lingos' decision to accommodate DelDot and the public in general had constructive notice. At both hearings, Tyler objected to the Lingos' development plan. The Coalition submitted a letter at the December 15, 1998 hearing, recording its various objections, including with respect to the increased traffic and the potential road. Thus, the Coalition cannot claim any surprise at the modification of the original plan to indicate the DelDot's contemplation of a potential future road.

Moreover, the Coalition cannot dispute that the record maintained for the public by the Planning & Zoning Department included all of the information needed for concerned citizens to inform themselves about the discussions between the Lingos and DelDot and to prepare for the hearing. Lawrence B. Lank, the Director of the Department, which maintained the public file, submitted a dispositive affidavit in this matter. Lank states that the original and a faxed copy of DelDot's August 7, 1998 letter were in the file prior to the November 19, 1998 hearing before the Commission. A faxed copy of DelDot's November 19, 1998 letter was in the file before that day's hearing, although the original was not received until a later date.[16] Also, the November 19, 1998 letter from the Lingos' counsel was in the file on that date. Thus, the public was on notice of the Lingos' decision to accommodate DelDot.

Plaintiff's final contention rests on the fact that the map was not formally revised until the December 15, 1998 hearing. Plaintiff further contends that, at the hearing, the revised map showing the dedicated right-of-way was placed on an easel facing

---

15. *See, e.g.,* 17 *Del.C.* § 145.

16. Plaintiff submitted an affidavit by Tyler, in which he explains that *the Coalition's records* indicate that the pertinent letters may have been filed on a later date. Tyler neither explains how the Coalition's records are author- itative on the content of the public record kept by the Department nor asserts affirmatively that the documents were not in the file. Therefore, his affidavit does not conflict with that of Lank, which is authoritative and dispositive of the factual issue.

the Council members and not the public. Since the public already knew that a dedication for a road was being put in place on the southern portion of the property via a dedicated right-of-way, changing the map merely provided an opportunity to view what was already described in the papers. Also, the Coalition concedes that the easel was, at some point in the hearing, moved to face the audience and, in any event, if members of the public wanted to take a closer look at the easel, they could have done so.

In sum, the Coalition, as well as any member of the public, had every opportunity to inform itself of and be heard with respect to the Lingos' proposed rezoning plan. Indeed, the Coalition did all it could to convince the Commission and the Council to reject the Lingos' plan. Adequate procedural due process was afforded the Coalition and the public in general.

## IV.

For the reasons set forth above, the Citizens Coalition's motion for summary judgment is DENIED and the Lingos' motion for summary judgment is GRANTED. It is so ordered.