IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| TOWN OF FENWICK ISLAND and SUSSEX COUNTY, | § § § | No. 153, 2026 |
| Plaintiffs Below, Appellants, | § § § § | Court Below: Court of Chancery of the State of Delaware |
| v. | § § | C.A. No. 2025-1478 |
| STATE OF DELAWARE and THE HONORABLE MATTHEW S. MEYER, in his official capacity as Governor of the State of Delaware, and RENEWABLE REDEVELOPMENT, LLC, | § § § § § § § § | |
| Defendants Below, Appellees. | § § | |

Submitted: May 20, 2026
Decided: May 26, 2026

Before **SEITZ**, Chief Justice; **TRAYNOR**, and **LEGROW**, Justices.

Upon appeal from the Court of Chancery. **AFFIRMED**.

M. Jane Brady, Esquire (*argued*), HALLORAN FARKAS + KITTILA, Wilmington, Delaware; Stephani J. Ballard, Esquire (*argued*), LAW OFFICES OF STEPHANI J. BALLARD, LLC, Montchanin, Delaware, *for Plaintiffs Below/Appellants, Town of Fenwick Island and Sussex County*.

Patricia A. Davis, Esquire, DELAWARE DEPARTMENT OF JUSTICE, Wilmington, Delaware, *for Defendants Below/Appellees, State of Delaware and The Honorable Matthew S. Meyer*.

Richard A. Forsten, Esquire (*argued*), Wendie C. Stabler, Esquire, Jennifer M. Becnel-Guzzo, Esquire, SAUL EWING LLP, Wilmington, Delaware, *for Defendant Below/Appellee, Renewable Redevelopment, LLC*.

**SEITZ**, Chief Justice:

Sussex County and the Town of Fenwick Island filed an expedited appeal from an expedited Court of Chancery bench ruling dismissing their claims against the defendants. The court held that a recently adopted state statute authorizing conditional use permits for electrical substations did not violate the Delaware Constitution or other rights.

On appeal, the plaintiffs repeat many of the same arguments dismissed by the Court of Chancery. They argue that the statute violates (1) the separation of powers doctrine in the Delaware Constitution; (2) Article II, Section 25 of the Delaware Constitution, which authorizes the General Assembly to enact laws that allow municipalities and counties to adopt zoning ordinances; (3) Article II, Section 16 of the Delaware Constitution, which provides that, except for public-purpose appropriation bills, no bill shall embrace more than one subject, which must be clearly expressed in the title; and (4) the public's due process rights. The Town of Fenwick Island also disputes its lack of standing to challenge the legislation.

As explained below, we agree with the Court of Chancery's reasoning on each issue and affirm its summary judgment ruling for the defendants. It is unnecessary to reach the standing issue.

2

I.

A.

We take the undisputed facts from the Court of Chancery's decision.[1] Renewable Redevelopment, LLC, a subsidiary of U.S. Wind, owns about 140 acres in Sussex County, Delaware. In 2024, Renewable sought a conditional use permit from Sussex County to build an electrical substation on the property. The substation will receive power from wind turbines planned for construction off the Delaware and Maryland coasts.

The Sussex County Planning and Zoning Commission agreed unanimously to recommend that Sussex County Council approve Renewable's permit. At a July 30, 2024 hearing, County Council considered the Commission's recommendation. Members of the public objected to the permit. By a 4-to-1 vote, County Council denied Renewable's conditional use permit.

Renewable petitioned the Superior Court for a writ of certiorari challenging County Council's decision. On July 30, 2025, while the Superior Court action was pending, the General Assembly passed Senate Bills 159 and 199 negating the permit denial. The Governor signed the legislation the same day. As the Court of Chancery

---

[1] *Town of Fenwick Island v. State*, C.A. No. 2025-1478, Dkt. No. 42, at 4 (Del. Ch. Mar. 25, 2026) (TRANSCRIPT) [hereinafter Transcript Op.] ("I draw from the undisputed facts presented by the parties' cross-motions.").

explained in its ruling, the General Assembly and the Governor found that "the substation is critical to the offshore wind turbine project, and wind turbine development is a key part of the State's efforts to fight climate change and transition Delaware to renewable forms of energy."[2]

SB 159, titled "An Act to Amend Title 26 of the Delaware Code Relating to Public Utilities," is codified at Title 26, Section 910 of the Delaware Code.  It provides as follows:

> § 910. Conditional use permit for electrical substations.
>
> (a) No county shall deny a conditional use permit to any electrical substation, along with any directly related project infrastructure, proposed to be located on unincorporated land within such county where the following conditions apply:
>
> (1) The substation is being proposed to support the operation of a proposed renewable energy generation project of 250 MW or greater;
>
> (2) The proposed substation would be located in a heavy industrial zone;
>
> (3) An electrical substation is an allowed conditional use within the proposed zone; and
>
> (4) The specific zoning district in which the proposed substation would be located already has an electrical substation located in such zone with a rating of 230kv or greater as of August 3, 2023.[3]

---

[2] *Id.* at 6.

[3] Del. S.B. 159, 153d Gen. Assem. (2025) (underline omitted) [hereinafter S.B. 159]; *see also* 26 *Del. C.* § 910.

Section 2 of the Act states:

> This Act shall have retroactive effect and any previous application to a county, on or after August 3, 2023, for approval of an electrical substation prior to the enactment of this Act that complies with the provisions of this Act shall be deemed to be approved, notwithstanding any adverse action which a county may have already taken with respect to such application prior to the enactment of this Act. Further, any action on the part of a county to alter the underlying zoning classification applicable to a previously filed application for a conditional use for electrical substation or otherwise render an application unqualifying by any means, including changing the underlying zoning or zoning code, is prohibited.[4]

SB 199 provides that SB 159 takes effect on January 31, 2026.[5]

After the legislation became law, the Superior Court asked the parties to address whether the General Assembly validly enacted the legislation. Eventually, the court observed that "it appears" that the General Assembly had the authority to enact the legislation and overturn County Council's permit denial.[6] But the Superior Court stayed the case because it believed that a decision before the legislation's effective date would be an improper advisory opinion.[7]

---

[4] S.B. 159.

[5] Del. S.B. 199, 153d Gen. Assem. (2025) ("An Act to Amend Title 26 of the Delaware Code and Chapter 44 of Volume 85 of the Laws of Delaware Relating to Public Utilities.").

[6] *Renewable Redevelopment, LLC v. Sussex Cnty. Council*, 2025 WL 3443112, at *1 (Del. Super. Dec. 1, 2025).

[7] *Id.*

B.

On December 23, 2025, almost five months after the Governor signed SB 159, the plaintiffs filed this action in the Court of Chancery. The complaint alleged that SB 159 violates (i) the separation of powers doctrine; (ii) Article II, Section 25 of the Delaware Constitution; (iii) Article II, Section 16 of the Delaware Constitution; and (iv) the public's due process rights. The plaintiffs also sought expedition and a temporary restraining order. The court agreed to expedite the case but denied the temporary restraining order when Renewable agreed to postpone construction until April 30, 2026.

After considering the parties' cross-motions for summary judgment, the Court of Chancery upheld the legislation. In a comprehensive bench ruling, the court held that: the Town of Fenwick lacked standing to challenge the legislation; separation of powers restrictions did not apply to a subordinate governmental body like Sussex County that is "an arm of the legislative branch";[8] the General Assembly had plenary land use authority and could reclaim zoning power delegated to the counties and municipalities; the legislation did not violate the one subject/one title constitutional requirement because the bill adequately described and concerned public utilities and electrical substations; the County's "public" due process theory did not succeed

---

[8] Transcript Op. at 23.

6

because due process protects substantive rights of injured parties that were not before the court and a County cannot assert due process against the State; the General Assembly may by statute amend or limit delegations of authority when conflicts exist; and finally, the County waived its spot zoning claim, but even if it did not, Delaware courts have not used spot zoning to invalidate ordinances. The court entered summary judgment for the defendants.

C.

On appeal, the plaintiffs have for the most part narrowed their arguments to challenges under the Delaware Constitution and standing. We review *de novo* constitutional challenges to state laws and statutory interpretation issues.[9] As with any constitutional challenge, we start with the "'strong judicial tradition in Delaware' that supports a 'presumption of the constitutionality of a legislative enactment.'"[10] In other words, "[l]egislative acts should not be disturbed except in clear cases . . . and should not be declared invalid unless [the legislative

---

[9] *Newark Prop. Ass'n v. State*, 350 A.3d 1224, 2025 WL 3157392, at *4 (Del. Nov. 12, 2025) (TABLE).

[10] *Roberson v. State*, --- A.3d ---, 2026 WL 962171, at *3 (Del. Apr. 9, 2026) (quoting *State v. Baker*, 720 A.2d 1139, 1144 (Del. 1998)).

enactment's] invalidity is beyond doubt."[11]   The plaintiff "has the burden of overcoming the presumption of its validity."[12]

## II.

## A.

We begin with standing.  The plaintiffs contest the Court of Chancery's finding that the Town of Fenwick Island lacks standing to pursue the claims in the complaint.[13]   Ordinarily, we treat standing "as a threshold issue 'to ensure the litigation before the tribunal is a case or controversy that is appropriate for the exercise of the court's judicial powers.'"[14]  On appeal, however, the defendants have not challenged Sussex County's standing.[15]  And Sussex County and Fenwick Island raise the same claims in their complaint and on appeal.  Because Fenwick Island's

---

[11] *Rutledge v. Clearway Energy Grp. LLC*, --- A.3d ---, 2026 WL 548504, at *2 (Del. Feb. 27, 2026) (alteration in original) (quoting *Justice v. Gatchell*, 325 A.2d 97, 102 (Del. 1974)).

[12] *Justice*, 325 A.2d at 102.

[13] Transcript Op. at 9–13.

[14] *Brookfield Asset Mgmt., Inc. v. Rosson*, 261 A.3d 1251, 1262 (Del. 2021) (quotation marks omitted) (quoting *El Paso Pipeline GP Co., L.L.C. v. Brinckerhoff*, 152 A.3d 1248, 1256 (Del. 2016)).

[15] Answering Br. 36 n.67 ("[A]s the Court [of Chancery] did not rule on the County's standing, Appellees did not cross-appeal the issue.").

standing will not affect the outcome of the appeal, we can bypass standing and proceed to the merits.[16]

B.

Turning to the separation of powers issue, "[t]he Doctrine of Separation of Powers is a rule forbidding one branch of government from exercising powers exclusively assigned to another . . . ."[17] The doctrine makes clear that "state government has been divided into the three departments, legislative, executive and judicial" and "one department may not encroach on the field of either of the others."[18]

The plaintiffs concede that, unless the separate branches of government share powers, the separation of powers doctrine requires the three branches of Delaware government – executive, legislative, and judicial – to stay in their own constitutional lanes. They contend on appeal, however, that separation of powers should also operate not just between the separate branches of government but also within the legislative branch. As they argue, the General Assembly cannot enact legislation that interferes with a quasi-judicial land use decision of a subordinate government

---

[16] *McKenna v. Singer*, 2017 WL 3500241, at *15 n.218 (Del. Ch. July 31, 2017) (declining to address issue where "a decision on standing would save no resources at this stage").

[17] *Op. of the Justs.*, 380 A.2d 109, 113 (Del. 1977).

[18] *Id.* (quoting *Trs. of New Castle Common v. Gordy*, 93 A.2d 509, 517 (Del. 1952)).

even though the subordinate government is exercising powers delegated by the General Assembly.

The plaintiffs have not cited a single federal or state authority supporting their novel theory of "vertical" rather than "horizontal" separation of powers. That is not surprising. The separation of powers doctrine addresses acts by the three branches of government. It does not apply within a branch of government.

To accept the plaintiffs' novel theory would ignore the hierarchical structure of the legislative branch. Under the Delaware Constitution, the General Assembly controls zoning within the State.[19] Through various statutes, the General Assembly has delegated zoning authority to county and municipal governments.[20] That delegation, however, is not immutable. The General Assembly may change or revoke delegated zoning powers and has done so frequently.[21] Here, County Council

---

[19] Del. Const. art. II, § 25; *Delaware Dep't of Nat. Res. & Env't Control v. Sussex Cnty.*, 34 A.3d 1087, 1090 (Del. 2011) ("The power to zone is vested in the General Assembly."); *see also New Castle Cnty. Council v. BC Dev. Assocs.*, 567 A.2d 1271, 1275 (Del. 1989) ("[T]he [zoning] power of Council is analogous to that of an administrative agency, since the fundamental power to regulate land use rests with the General Assembly." (citing Del. Const. art. II, § 25)).

[20] *See, e.g.*, 9 *Del. C.* § 6902 (delegating land use authority to Sussex County government).

[21] *See, e.g.*, *Tate v. Miles*, 503 A.2d 187, 191 (Del. 1986) (observing that "if the General Assembly were to enact a statute inconsistent with [Title 9] the later statute would supersede the earlier statute, and there would be an implied repealer"); *Wilmington Med. Ctr., Inc. v. Bradford*, 382 A.2d 1338, 1351 (Del. 1978) (upholding legislation modifying already delegated zoning power by exempting medical facilities from county land use regulations); 29 *Del. C.* § 4819(b) (modifying county zoning power to bar zoning ordinances which might prohibit slot machines); 62 Del. Laws ch. 390 (1980) ("For purposes of all county zoning ordinances" certain facilities "shall be construed to be a permitted single family residential use of such property."). *Cf. DiSabatino v.*

10

denied a permit for an electrical substation. The General Assembly decided that greater interests were at stake and passed legislation that overrode County Council's permit denial. As the ultimate authority for zoning policy throughout the State, it could do so.

The cases relied on by the plaintiffs prove the point that separation of powers addresses conflicts between government branches and not vertically within a branch of government. In *Evans v. State*, the Superior Court sentenced a defendant to life in prison with the possibility of parole.[22] On appeal, Evans argued that he was entitled to a conditional release date. This Court agreed with Evans and reversed. In response to the reversal, the General Assembly passed a statute declaring the appellate decision "null and void." We held that legislation that purports to exercise judicial power in a specific case violated Article IV, Sections 1 and 11 of the Delaware Constitution – jurisdiction of the Supreme Court.[23] As is apparent, *Evans* involved the General Assembly infringing upon a function assigned to the judicial branch by the Delaware Constitution. It did not apply the separation of powers doctrine vertically within a branch of government.

---

*Ellis*, 184 A.2d 469, 473 (Del. 1962) (observing "the General Assembly's well-established right to alter, enlarge or revoke the power it grants to a legislative creature").

[22] 872 A.2d 539, 542–43 (2005) (applying doctrine to invalidate legislation retroactively reversing a judicial decision).

[23] *Id.* at 549–50.

11

The plaintiffs also rely on *Sierra Club v. DNREC*.[24]  There, the Sierra Club appealed a dredging-permit approval by DNREC to the Environmental Appeals Board.  Before the EAB issued its order, the General Assembly passed legislation authorizing the dredging.  Relying on *Evans*, the Sierra Club sought a preliminary injunction to enjoin the permit.  It argued that the General Assembly's legislative action violated the separation of powers.  The Court of Chancery was not persuaded. It distinguished *Evans* because the General Assembly did not "reverse" the EAB's decision.  Instead, the EAB had not yet issued its decision when the General Assembly passed the legislation.

The plaintiffs here speculate that the outcome of *Sierra Club* would have been different if the timing had been different.  In other words, the court would have enjoined DNREC from issuing the permit if the General Assembly had passed the legislation after the EAB ruling.  In *Sierra Club*, however, the court did not address the "vertical" application of separation of powers.  More to the point, the Court of Chancery recognized that the legislation was "a permissible exercise of legislative authority—notwithstanding its application to an ongoing administrative proceeding, its specificity mooting a particular administrative appeal, and its impact upon a third

---

[24] 2006 WL 1716913 (Del. Ch. June 19, 2006), *aff'd sub nom., Sierra Club v. Delaware Dep't of Nat. Res. & Env't Control*, 919 A.2d 547 (Del. 2007).

party."[25]   And the court held that when the General Assembly gives "specific guidance" through legislation "in an area where managerial authority already had been delegated to DNREC and the EAB," it could "reclaim[] a portion of that authority by duly enacting legislation and [does] not, therefore, overstep its constitutional bounds."[26]

Separation of powers issues arise when one co-equal branch of government invades the exclusive constitutional authority of another.  Here, the conflict arose exclusively within the legislative branch.  Thus, the separation of powers claim was properly dismissed.

C.

Next, the plaintiffs argue that SB 159 violates Article II, Section 25 of the Delaware Constitution.  Section 25 authorizes the General Assembly to enact laws allowing municipalities and the three counties to adopt zoning ordinances and other land use regulations.  The plaintiffs claim that once the General Assembly delegates zoning authority to County Council, it cannot through targeted legislation override County Council's delegated powers.

---

[25] *Id.* at *4.

[26] *Id.* at *5.

Nothing in the text of Section 25, however, supports this argument.[27]  And, as noted earlier, the General Assembly has done so before.  Undeterred, the plaintiffs argue that "[t]he Delaware Supreme Court has previously recognized that the delegation of zoning authority to Sussex County is binding."[28]  But the cases relied on by the plaintiffs do not support the argument.

For instance, in *Delaware Department of Natural Resources & Environmental Control v. Sussex County*, DNREC adopted regulations addressing buffer zones around bodies of water.[29]  In its zoning code, Sussex County had more limited buffers.  At issue was whether DNREC exceeded its statutory authority, which prohibited DNREC from adopting regulations that "extend, modify or conflict with any law of this State or the reasonable implications thereof."[30]  We upheld a Superior

---

[27] It reads:

> § 25.  Laws permitting zoning ordinances and use of land.
>
> The General Assembly may enact laws under which municipalities and the County of Sussex and the County of Kent and the County of New Castle may adopt zoning ordinances, laws, or rules limiting and restricting to specified districts and regulating therein buildings and structures according to their construction and the nature and extent of their use, as well as the use to be made of land in such districts for other than agricultural purposes; and the exercise of such authority shall be deemed to be within the police power of this State.

Del. Const. art. II, § 25.

[28] Opening Br. 25.

[29] 34 A.3d 1087, 1089 (Del. 2011).

[30] *Id.* (quoting 7 *Del. C.* § 6010(a)).

14

Court decision finding that DNREC's buffer regulation amounted to zoning that conflicted with Sussex County's zoning code and therefore exceeded DNREC's authority under the statute.

*DNREC* is irrelevant here. The General Assembly's legislative power is not restricted by limitations it placed on DNREC's regulatory authority. The same goes for *Hayward v. Gaston*, where our Court affirmed a Court of Chancery decision holding that sovereign immunity did not exempt a state agency from complying with zoning restrictions for group housing.[31] Like *DNREC*, *Hayward* addressed a state agency requirement to follow local zoning codes. It did not address the General Assembly's constitutional authority to regulate zoning through legislative acts.

The General Assembly controls the zoning power. Even though it has delegated that power to the counties and municipalities, it has the power to reclaim it and need not defer to the decisions of subordinate governments.

D.

SB 159 is titled "An Act to Amend Title 26 of the Delaware Code Relating to Public Utilities." Article II, Section 16 of the Delaware Constitution requires that, except for appropriations, no bill "shall embrace more than one subject, which shall be expressed in its title." The plaintiffs argue that SB 159 violates the title

---

[31] 542 A.2d 760, 767 (Del. 1988).

15

requirement because the substance of SB 159 concerns county zoning functions, not public utilities. Alternatively, they argue that, if the proposed legislation relates to public utilities, it violates the one-subject limitation of Section 16 because it also addresses zoning. As explained next, each argument fails.

1.

As this Court stated in 1963 in *Opinion of the Justices*:

> [T]he purpose of this section of the Constitution is to insure that the titles of bills shall be sufficiently comprehensive to give the people of the State, as well as the members of the General Assembly, fair and reasonable notice of the subject matter of the proposed legislation. Fundamentally, it is designed to prevent deception of the general public and the members of the General Assembly by titles to bills which give no ad[e]quate information of the subject matter of the bills.[32]

In other words, Section 16 safeguards against "so-called sleeper legislation," or legislation that is hidden from the public.[33]

When it comes to the descriptiveness of a bill's title, "[t]his court has often held that the title of an act need not be an index of the details of the bill."[34] Rather, a bill satisfies Section 16 "if the title is so framed as to apprise a reasonable person, interested in the subject matter of the legislation, sufficiently to lead him to an

---

[32] 194 A.2d 855, 856 (Del. 1963).

[33] *Evans*, 872 A.2d at 551 (quoting *Op. of the Justs.*, 194 A.2d at 856).

[34] *Wilson v. State*, 264 A.2d 510, 512 (Del. 1970).

inquiry into the body of the bill."[35]   In addition, "the constitutional requirement of particularization in the title of legislation is less rigid in the case of amendatory acts rather than original legislation."[36]

The plaintiffs say that "by the very terms of the statute itself, the bill addresses 'conditional use permits,' a county zoning function."[37]   They argue that, because the bill has "nothing to do with 'Public Utilities' and everything to do with placing limitations on the exercise of local zoning authority," the public did not have adequate notice of the bill's subject matter.[38]

We disagree.  The bill has everything to do with public utilities.  As the Court of Chancery described it, SB 159 "addresses conditional use permits of electrical substations that provide public utilities."[39]   The legislation was related to the topic of public utilities, and the title embraced the same subject matter.

---

[35] *Id.*; *see also Op. of the Justs.*, 246 A.2d 90, 95 (Del. 1968) (finding title constitutionally sufficient even though "the bill contain[ed] many matters which are not referred to at all in the title," because "the title ha[d] broad implications" which would have motivated an "interested person to inquire into its contents").

[36] *Drake v. State*, 682 A.2d 626, 1996 WL 343822, at *2 (Del. June 13, 1996) (TABLE) (holding that the challenged title, "An Act to Amend Title 11 of the Delaware Code Relating to Certain Sexual Offenses," was constitutional because despite not stating the section of the Delaware Code being amended, the title would put a person interested in the subject matter on notice to make a deeper inquiry).

[37] Opening Br. 33.

[38] *Id.*

[39] Transcript Op. at 36.

17

Alternatively, the plaintiffs argue that, even if the legislation relates to public utilities, it also concerns a county zoning function. According to the plaintiffs, it therefore violates Section 16's single subject matter limitation.

The one-subject limitation "is not violated by any act having various details properly pertinent and germane to one general subject."[40] Although SB 159 addresses a county zoning function, it addresses zoning within the context of the general subject matter of public utilities.

Our decision in *Smith v. Guest* is instructive.[41] In *Smith*, the respondent argued that SB 84, titled "An Act to Amend Title 13 of the Delaware Code Relating to Parents," violated the Delaware Constitution's one subject rule. Although the legislation included (a) the addition of a new type of legal parent-child relationship (b) an amendment to the statutory definition of a parent (c) a retroactivity provision and (d) sections relating to claim and issue preclusion, we upheld the legislation because all the sections were germane to the act's stated subject matter –

---

[40] *State v. Caruso*, 32 A.2d 771, 778 (Del. Gen. Sess. 1943).

[41] 16 A.3d 920 (Del. 2011).

parenthood.[42]  So too here.  The zoning issues were germane to the public utility

purposes of the legislation.[43]

E.

Finally, the plaintiffs claim that Section 2 of SB 159, which provides that prior

conditional use applications satisfying the statutory criteria are deemed approved,

violates due process protections "to which the public is entitled."[44]  We are unsure

about the basis for this argument.  The plaintiffs disavow a due process argument

based on the federal Constitution.[45]  And they state in their brief, without further

elaboration, that "they are claiming due process violations under the Delaware

---

[42] *Id*. at 930.

[43] *See Wilmington Med. Ctr., Inc.*, 382 A.2d at 1343 (finding that the Delaware Health Facilities Act did not violate the one-subject limitation "in that it not only creates the [Delaware Health Facilities] Authority, but it also purports to divest certain taxing powers of New Castle County" because "(m)any things may be included in the body of an Act which are, in themselves, matters of detail concerning the subject as expressed in the title" (alteration in original) (quotation omitted)); *Hall v. Coupe*, 2016 WL 3094406, at *6 (Del. Ch. May 25, 2016) (dismissing the plaintiffs' one-subject challenge for statute relating to records of incarcerated individuals because "[t]he mere fact that several categories of records" were addressed could not form the basis of a constitutional violation).

[44] Opening Br. 3.

[45] *Id*. at 39.

19

Constitution . . . ."[46] At oral argument, the plaintiffs characterized their due process claim as a "common law" due process claim.[47]

We are unaware of any "common law" basis for a due process claim. And the two cases relied upon by the plaintiffs support only a constitutional basis for due process. In *County Council of Sussex County v. Green*, we affirmed the Court of Chancery's decision invalidating a rezoning ordinance. The Court of Chancery invalidated the rezoning ordinance because it was inconsistent with the comprehensive development plan adopted by County Council at the direction of the General Assembly.[48] On appeal, we observed that County Council does not have a "free hand" to regulate land use – instead, "[i]t must conform with standards established by the General Assembly," including "due process considerations."[49] In other words, County Council had to respect due process requirements when it undertook a quasi-judicial function set by the General Assembly.

---

[46] *Id.*

[47] Oral Argument Video at 9:03–27, https://courts.delaware.gov/supreme/oralarguments ("The Court: [W]hat is your due process claim rooted in, is it a [ ] Delaware Constitutional claim . . . ? Counsel: It would be . . . a common law claim really that this Court by common law in *Green* and also . . . this is Chancery, in *Citizens Coalition v. County Council*, has recognized the due process that applies to all zoning decisions which is notice and a right to be heard from the public.").

[48] 516 A.2d 480, 481 (Del. 1986).

[49] *Id.*

20

*Citizens Coalition, Inc. v. County Council of Sussex County* is the same.[50] Relying on *Green*, the court held that, in certain circumstances "the Council must provide its citizens with procedural due process, i.e., adequate notice of the matter to be decided and an opportunity to be heard."[51] The court relied on the Delaware Constitution and a state statute, 9 *Del. C.* § 6812, requiring notice and public hearings the County must follow for certain planning and zoning functions. Once again, the County, not the General Assembly, must follow those requirements when performing quasi-judicial acts. There is no "common law" due process requirement restricting legislative action by the General Assembly.

## III.

The judgment of the Court of Chancery is affirmed.

---

[50] 773 A.2d 1018 (Del. Ch. 2000).

[51] *Id*. at 1023.